UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No.: 0:17-cv-60463-KMM

RAYMOND VICTOR,

    Plaintiff,

v.

CREDIT ONE BANK, N.A.,

    Defendant.
                                       /

## **DEFENDANT, CREDIT ONE BANK, N.A.'S, MOTION TO DISMISS AND COMPEL ARBITRATION AND INCORPORATED MEMORANDUM OF LAW**

    Defendant, Credit One Bank, N.A. (Credit One), through counsel and under the Federal Rules of Civil Procedure and the Federal Arbitration Act (FAA), 9 U.S.C. §§ 2-4, hereby moves the Court for entry of an Order compelling arbitration and dismissing this lawsuit with prejudice, or in the alternative entry of an Order staying these proceedings and compelling plaintiff, Raymond Victor (plaintiff), to pursue his claims in arbitration.

    As explained in detail below, plaintiff's claims against Credit One are subject to mandatory binding arbitration pursuant to the underlying credit card agreement for plaintiff's credit card account at issue. In fact, the United States District Court for the Middle District of Florida, Fort Myers Division, the United States District Court for the District of New Jersey, United States District Court for the Middle District of Tennessee, United States District Court for the Western District of New York, United States District Court for the Southern District of New York, United States District Court for the Eastern

District of New York, and the United States District Court for the Eastern District of Pennsylvania recently analyzed the identical arbitration clause and compelled arbitration in similar cases against Credit One. *See Babb v. Credit One*, No. 2:16-cv-00266-SPC-CM, Doc. 20 (M.D. Fla. July 22, 2016); *Ellin v. Credit One Bank,* 2015 WL 7069660 (D. N.J. Nov. 12, 2015); *Bibee v. Credit One Bank*, 2015 WL 5178700 (M.D. Tenn. Sept. 4, 2015); *Salerno v. Credit One Bank*, 2015 WL 6554977 (W.D.N.Y. Oct. 29, 2015); *Cal v. Credit One Bank, N.A.*, No. 15-cv-3641-MAS-TJB, ECF 15 (D. N.J. Dec. 16, 2015); *Sandra Velez v. Credit One Bank*, Case No. 15-CV-4752, (E.D.N.Y. Jan. 25, 2016); *Griffin v. Credit One Financial d/b/a Credit One Bank*, Case No. 2:15-CV-03700 (E.D. Penn. Feb. 11, 2016); *Bubay v. Credit One Bank*, No. 2:15-cv-02831-KSH-CLW, ECF 18 (D. N.J. March 24, 2016); and *Boule v. Credit One Bank*, 2016 WL 3015251 (S.D. N.Y. May 11, 2016). Likewise, this Court should order plaintiff to pursue his claims against Credit One in arbitration and dismiss plaintiff's claims with prejudice.

### I.  PROCEDURAL HISTORY AND BACKGROUND

On or about March 3, 2017, plaintiff filed this action alleging Credit One violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, *et seq.*, and the Florida Consumer Collection Practices Act (FCCPA), Fla. Stat. § 559, *et seq.*, by calling his cellular telephone without consent regarding his Credit One credit card account. (Dkt. 1.)

Plaintiff, however, agreed to binding arbitration of any and all disputes arising out of his Credit One credit card account. Plaintiff's Cardholder Agreement for the account provides "you or we may, without the other's consent, require that any controversy or dispute between you and us (all of which are called "Claims"), be submitted to mandatory,

binding arbitration." *See* Affidavit of Ryan Hunt, attached hereto as **Exhibit A**; *see also* the Cardholder Agreement attached as **Exhibit A-3**.

On or around February 7, 2014, Credit One sent plaintiff a written solicitation for a pre-approved credit card with a unique reservation number of FD16L423XYVM. *Id.* at ¶ 7. The back pages of the written solicitation for a pre-approved credit card bear terms and conditions applicable to the credit card, including arbitration. While Credit One does not retain actual copies of each solicitation it sends potential customers, it does keep sample copies of the solicitations it sends potential customers. The sample copy is an exact replica of the solicitation that is sent to potential customers, but without the potential customer's name, address and complete reservation number laser printed on the solicitation. The sample copy of the solicitation that was sent to plaintiff is attached hereto as **Exhibit A-1**. Note that the first seven (7) digits of the unique reservation number noted in paragraph 7 of the Affidavit are also noted on the sample solicitation attached as Exhibit A-1. Page 3 of the solicitation contains language that states:

> By signing/submitting this Acceptance Certificate, I acknowledge I have read the terms and conditions on both sides of this letter and the offer letter, and agree to be bound by those terms.

**Ex. A** at ¶ 9, **Ex. A-1** at p. 3. Page 4 of the solicitation plaintiff received has the following pertinent language:

> **ARBITRATION AGREEMENT:** You and we agree that either you or we may, without the other's consent, require that any dispute between you and us be submitted to mandatory, binding arbitration. A more detailed description of this Arbitration Agreement will be sent with your card.

**Ex. A** at ¶ 10; **Ex. A-1** at p. 4. Additionally, the solicitation states the following:

3

> If this application is accepted and one or more credit cards are issued, I agree to pay all charges incurred in accordance with the terms and conditions of the Acceptance Certificate, Cardholder Agreement, Disclosure Statement, and Arbitration Agreement and any future amendments), which will be sent with my card.

*Id.*

On or around April 18, 2014, plaintiff accepted the written solicitation and a credit card account ending in 7963 (the "Account") was opened with Credit One. *See* **Ex. A** at ¶ 11; *see also* screenshot of the information provided by plaintiff attached as **Exhibit A-2**.

In response to plaintiff's application, Credit One mailed the credit card to plaintiff, and enclosed in the same envelope the *Visa/Mastercard Cardholder Agreement, Disclosure Statement and Arbitration Agreement* (hereinafter the "Cardholder Agreement"), which governs plaintiff's Account and plaintiff's relationship with Credit One. **Ex. A** at ¶¶ 12-13; **Ex. A-3**.

The Cardholder Agreement provides:

> **PLEASE READ THIS PROVISION OF YOUR CARD AGREEMENT CAREFULLY. IT PROVIDES THAT EITHER YOU OR WE CAN REQUIRE THAT ANY CONTROVERSY OR DISPUTE BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING.**
>
> . . .
>
> You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration. This arbitration provision is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 et seq., and (to the extent State law is applicable), the State law governing this Agreement.

**Claims Covered:**

- Claims subject to arbitration include, but are not limited to, disputes relating to the establishment, terms, treatment, operation, handling, limitations on or termination of your account; . . . any transactions or attempted transactions involving your account, whether authorized or not; billing, billing errors, credit reporting, the posting of transactions, payments or credits, or collections matters relating to your account; . . . and any other matters relating to your account, a prior related account or the resulting relationships between you and us.

. . .

- Claims subject to arbitration include Claims based on any theory of law, any contract, statute, regulation, ordinance, tort (including fraud or any intentional tort), common law, constitutional provision, respondeat superior, agency or other doctrine concerning liability for other persons, custom or course of dealing or any other legal or equitable ground (including any claim for injunctive or declaratory relief). Claims subject to arbitration include Claims based on any allegations of fact, including an alleged act, inaction, omission, suppression, representation, statement, obligation, duty, right, condition, status or relationship.

. . .

- If you or we require arbitration of a particular Claim, neither you, we, nor any other person may pursue the Claim in any litigation . . . .

**Ex. A-3**, p. 6.

Under the Cardholder Agreement, either party may compel arbitration for any dispute relating to the handling of the Account including any communication, credit reporting or collection of the Account. *See id.* The arbitration provision further applies to all Claims based on any theory of law including statute, tort (including fraud or any intentional tort), and common law based upon any allegation of fact, including an alleged act, inaction, omission, suppression, representation, statement, obligation, duty, right,

condition, status or relationship. *See id.* Moreover, the Cardholder Agreement expressly provides that "[a]ny questions about what Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced." *Id.*

Plaintiff activated the credit card on or around May 16, 2014. *See* **Ex. A** at ¶ 15. Plaintiff made charges to the credit card and payments on the account. *See* Account Statements from April 18, 2014 to February 23, 2016 attached hereto as **Exhibit A-4**. In addition to accepting the account terms and conditions when he submitted an application for the credit card, plaintiff reaffirmed his acceptance of the terms and conditions by requesting, receiving, and signing his credit card, as well as by charging purchases to the card and making payments on the Account, as described in the Cardholder Agreement. *See* **Ex. A** at ¶ 17; **Ex. A-3**.

## II. LAW AND ARGUMENT

### A. *Plaintiff Bears The Burden to Establish This Lawsuit Should Not Be Dismissed.*

Courts routinely "treat motions to compel arbitration as motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)" or as "a motion seeking dismissal based on an agreement to arbitrate . . . under Rule 12(b)(3)" since "[a]n arbitration clause is simply a type of forum-selection clause." *MRI Scan Ctr., LLC v. Natl. Imaging Assocs., Inc.,* 2013 WL 1899689, at *2 (S.D. Fla. May 7, 2013); *Johnson v. Orkin, LLC*, 556 Fed. Appx. 543, 544 (7th Cir. 2014) (unpublished) (internal citations omitted); *see also Grasty v. Colorado Tech. U.*, 599 Fed. Appx. 596, 597 (7th Cir. 2015) (unpublished); *Aggarao v. MOL Ship Mgt. Co., Ltd.,* 675 F.3d 355, 366 (4th Cir. 2012); *Hayes v. Delbert Servs. Corp.*,

2015 WL 269483, at *1 (E.D. Va. Jan. 21, 2015); *Wal-Mart Stores, Inc. v. Helferich Pat. Licensing, LLC*, 51 F. Supp. 3d 713, 721 (N.D. Ill. 2014).

Nevertheless, under either Rule 12(b)(1) or 12(b)(3), the Court "may consider matters beyond the pleadings." *Fields v. NCR Corp.*, 683 F. Supp. 2d 980, 984 (S.D. Iowa 2010). Moreover, plaintiff bears the burden of proving jurisdiction and venue or his complaint will be dismissed. *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

**B.**     ***A Strong Federal Policy Exists Favoring Arbitration.***

The FAA provides written contracts to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This strong language manifests a "liberal federal policy favoring arbitration agreements." *Moses J. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Thus, courts are directed to "rigorously enforce agreements to arbitrate." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (internal quotation marks omitted) (citation omitted).

In April of 2011, the United States Supreme Court reaffirmed the FAA's "liberal federal policy favoring arbitration," reinforced the "fundamental principle that arbitration is a matter of contract," and directed that "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745, 179 L.Ed.2d 742, 751 (2011) (internal citation omitted).

7

On January 10, 2012, the Supreme Court of the United States again confirmed the enforceability of arbitration clauses. *See Compucredit Corp. v. Greenwood*, 132 S.Ct. 665 (2012). In *Greenwood*, the Court considered whether the FAA requires an arbitration agreement to be enforced in suits brought pursuant to the Credit Repair Organizations Act (CROA), which is silent on whether CROA claims can proceed in arbitration. Writing for the majority, Justice Scalia was blunt: the creation of a statutory cause of action is not enough to imply an exception to the FAA rule validating arbitration agreements. *Id.* at 670. The Court held:

> It is utterly commonplace for statutes that create civil causes of action to describe the details of those causes of action, including the relief available, in the context of a court suit. If the mere formulation of the cause of action in this standard fashion were sufficient to establish the 'contrary congressional command' overriding the FAA, valid arbitration agreements covering federal causes of action would be rare indeed. But that is not the law.

*Id*.

The FAA "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009). "In particular, the FAA provides that as a matter of federal law '[a] written provision' in a maritime or commercial contract showing an agreement to settle disputes by arbitration 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract.'" *Id*. (quoting 9 U.S.C. § 2). "Congress designed the FAA to overrule the judiciary's longstanding reluctance to enforce agreements to arbitrate and its refusal to put

such agreements on the same footing as other contracts, and in the FAA expressed a strong federal policy in favor of resolving disputes through arbitration." *Id*. (citations omitted).

"In deciding whether claims are subject to arbitration, a court must consider (1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (citing *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.,* 307 F.3d 24, 28 (2d Cir. 2002)); *see also Mehler v. Ther Terminix Int'l Co., L.P.*, 205 F.3d 44, 47 (2d Cir. 2000).

Understandably, the standard for demonstrating arbitrability is not high. The court's only role when presented with a question of arbitrability is to determine (1) whether a valid arbitration agreement exists, and (2) whether the scope of the parties' dispute falls within that agreement.

**C.**     ***Plaintiff Agreed to Arbitrate His Claims Against Credit One.***

As explained above, when plaintiff opened the Account, he agreed to submit all disputes relating to his credit card Account to arbitration. *See* **Ex. A** at ¶ 17; **Ex. A-3**. Plaintiff received notice of the arbitration provision twice *before* he used the credit card – first, in the solicitation and a second time in the Cardholder Agreement enclosed with the credit card. *Id.* at ¶¶ 8-13. Pursuant to Credit One's policy to include the applicable Cardholder Agreement containing the arbitration clause when mailing the credit card to the customer, plaintiff received the Cardholder Agreement as evidenced by his activation of the credit card and use of the card to make purchases. *Id.* at ¶¶ 12-16.

The overwhelming evidence shows plaintiff agreed to the terms of the Cardholder Agreement; therefore, the Cardholder Agreement creates a binding contract requiring plaintiff to arbitrate any and all disputes relating to the Account. *See* **Ex. A-3**. Further, this arbitration provision specifically mandates that it shall be governed by, and enforceable under the FAA. *Id.* Therefore, the first element of Credit One's motion to dismiss and compel arbitration is undeniably satisfied.

D.    ***Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement.***

Plaintiff's claims against Credit One all relate to the Account and as such fall within the scope of the arbitration agreement governing the Account. Plaintiff alleges Credit One violated the TCPA and the FCCPA when attempting to contact him about his delinquent Account. (Dkt. 1.) The arbitration agreement governing the Account is extremely broad and provides:

> Claims subject to arbitration include, but are not limited to, disputes relating to the establishment, terms, treatment, operation, handling, limitations on or termination of your account; . . . any transactions or attempted transactions involving your account, whether authorized or not; billing, billing errors, credit reporting, the posting of transactions, payments or credits, or **collections matters relating to your account**; . . . **and any other matters relating to your account**, a prior related account or the resulting relationships between you and us..

**Ex. A-3** (emphasis added).

Under the Cardholder Agreement, either party may initiate the arbitration. *See id.* The Cardholder Agreement provides arbitration is to be conducted in accordance with the rules and procedures of either of two nationally recognized arbitration administrators – the American Arbitration Association or JAMS. *See id.* Regarding the location, arbitration

hearings are to take place at a location in the same city as the U.S. District Court closest to plaintiff's billing address. *See id*. The Cardholder Agreement further provides if plaintiff prevails at arbitration on any claim, Credit One will reimburse plaintiff for any fees paid to the Administrator in connection with the arbitration proceedings. *See id*.

There can be little doubt plaintiff's claims against Credit One fall within the substantive scope of the arbitration provisions of the Agreement. Accordingly, both elements of a motion to compel have been met: (1) a valid agreement to arbitrate exists, and (2) the dispute falls within the scope of that agreement. Thus, this Court should find Credit One is entitled to invoke the arbitration provisions of the Agreement; and, accordingly, dismiss this instant action and compel plaintiff to pursue arbitration.

### III. CONCLUSION

WHEREFORE, defendant, Credit One Bank, N.A., respectfully requests this Court dismiss plaintiff's claims against Credit One, or, in the alternative, enter an order staying this matter and compelling plaintiff to pursue his claims against Credit One in arbitration, and for such other and further relief as this Court deems proper.

### IV. CERTIFICATE OF PRE-MOTION CONFERENCE

Pursuant to Local Rule 7.1(a)(3), undersigned counsel certifies the parties have conferred regarding the issues in this motion, and plaintiff objects to the relief requested.

Dated: May 17, 2017                            Respectfully submitted,

*/s/ Ashley N. Rector*
Ashley N. Rector, Esq.
Florida Bar No. 0106605
Dayle M. Van Hoose, Esq.
Florida Bar No. 0016277

>Sessions, Fishman, Nathan & Israel, L.L.C.
>3350 Buschwood Park Drive, Suite 195
>Tampa, Florida 33618
>Telephone: (813) 440-5327
>Facsimile: (866) 466-3140
>arector@sessions.legal
>dvanhoose@sessions.legal
>
>*Attorneys for Defendant,*
>*Credit One Bank, N.A.*

## CERTIFICATE OF SERVICE

I certify that on this 17th day of May 2017, a copy of the foregoing was filed electronically in the ECF system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system or U.S. First Class Mail including plaintiff's counsel as described below. Parties may access this filing through the Court's system.

>George N. Andrews, Esq.
>Loan Lawyers, LLC
>2150 S. Andrews Avenue, 2nd Floor
>Ft. Lauderdale, FL 33316
>george@fight13.com

>*/s/ Ashley N. Rector*
>Attorney